```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>RICHARD BALTER, et al.,<br><br>        Defendants.<br>_____<br><br>RICHARD BALTER,<br><br>        Petitioner,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | Criminal No. 93-536-01 (JBS)<br>&<br>Civil No. 08-1475 (JBS)<br><br>**OPINION** |

APPEARANCES:

Richard Balter, Pro Se
#17432-050
USP Allenwood
Inmate Mail/Parcels
P.O. BOX 3000
White Deer, PA 17887

Paul J. Fishman
United States Attorney
By:  James P. Lynch
     Norman Joel Gross
     Assistant United States Attorneys
OFFICE OF THE US ATTORNEY
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

**SIMANDLE,** District Judge:

## I. INTRODUCTION

These two cases are before the Court upon the petition of Richard Balter for a writ of mandamus [Civil No. 08-1475, Docket Item 1] to enforce an order of this Court entered upon the criminal docket in which he is a defendant [Criminal Docket No. 93-00536.]  Mr. Balter has also filed a substantively identical motion on the criminal docket, captioned as a "motion for discovery."  [Criminal No. 93-536-01, Docket Item 20].  Finally, Mr. Balter has moved for appointment of counsel in order to file new motions related to his conviction and/or incarceration [Civil No. 08-1475, Docket Item 10].  For the reasons explained below, the Court will deny all three motions.

## II. BACKGROUND

Richard Balter was convicted of one count of murder-for-hire and three counts of mail fraud.  This Court sentenced him to life imprisonment on September 14, 1994.  [Criminal Docket No. 93-00536.]  More than ten years later, on April 4, 2005, Mr. Balter moved pursuant to Rule 41(g), Fed. R. Crim. P.,[1] for the

---

[1] The Rule, which covers court procedure related to search and seizure, provides in relevant part that "[a] person aggrieved by . . . the deprivation of property may move for the property's return. . . . The court must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g).

return of property seized prior to his criminal trial consisting of personal and business financial records [Criminal No. 93-536-01, Docket Item 6].[2]

Mr. Balter was the president and CEO of Northeast Poly Products, Inc. ("NPP"). In 1993, as part of the criminal investigation leading to Mr. Balter's conviction, his business was searched and evidence was seized. The inventory of the search indicates that officers seized dozens of folders of unknown size, several business manuals, assorted business papers and correspondence, diskettes and CDs, and at least a dozen boxes of account records along with items such as desk calendars. (Davis Decl. attachment C.) It is impossible to accurately assess the volume of seized items from the search inventory because of the vagueness of some of the descriptions.[3]

Respondent did not oppose Petitioner's motion for the return of the property, but did assert that the seized documents were so voluminous as to make transfer to Petitioner, who is incarcerated, difficult or impossible. [Criminal No. 93-00536, Docket Item 7]. On August 21, 2006, the Court, having

---

[2] Mr. Balter is the petitioner on the civil docket, and the defendant on the criminal docket, but the Court will refer to him simply as Petitioner.

[3] The Court has no way of knowing, for example, whether the boxes of accounts receivable referred to in the search warrant inventory are the same size as the boxes eventually identified by Respondent in storage.

3

communicated with authorities at Petitioner's place of incarceration, ordered that "the United States Attorney's Office shall immediately return all personal and business financial records of Richard Balter to him by mail or other package delivery service, at the rate of ten (10) boxes per week until concluded."  [Criminal No. 93-00536, Docket Item 16, at 2.]

On February 26, 2007, Respondent submitted a letter from the paralegal assigned to the matter in order to demonstrate its compliance with the Court's order.[4]  [Criminal No. 93-00536, Docket Item 17].  The letter indicates that Respondent was able to find only twenty-one boxes of materials related to Defendant, and the boxes included attorney work product, grand jury transcripts, as well as some of the seized documents covered by this Court's Order.  A document-by-document determination of what was covered by the Order and Rule 41(g), Fed. R. Crim. P., narrowed the related files down to two boxes worth, which were shipped to Petitioner.

Surprised that only two boxes were sent to comply with an Order permitting ten boxes per week, Petitioner filed the present motion for writ of mandamus on March 24, 2008.  He seeks the return of the other materials from the twenty-one boxes excluded

---

[4]  The initial submission was identified as an affidavit, but was neither sworn nor notarized.  Respondent's submission in response to the Writ of Mandamus includes a duly sworn affidavit relating the same information.

4

from the two boxes ultimately sent to him, as well as any other property still in possession of Respondent that is covered by this Court's previous orders. [Civil No. 08-1475, Docket Item 1]. Petitioner has also filed a redundant motion seeking the same relief on the criminal docket [Criminal No. 93-00536, Docket Item 20], along with many ex parte letters requesting discovery of information related to the grand jury proceedings and his records, tangentially referring to other legal theories [E.g., Docket Item 21 (referencing First Amendment)].

The search warrant inventory indicates that the government did, at one time, have more of Petitioner's property than that contained in the boxes sent to him. Respondent's submission in response to the March 24, 2008 petition sheds some more light on what happened to this additional seized property. According to Special Agent James Glynn of the IRS, who participated in the execution of the initial search warrant, all of the evidence obtained on the search warrant inventory was initially transported to the US Attorney's Office in Newark. (Glynn Decl., at 1-2.) During trial in Camden, that portion of the documents needed to prove the crimes ultimately charged were moved to the US Attorney's Office in Camden. Special Agent Glynn's understanding is that after all appeals had been exhausted, the documents not used at trial were returned to NPP or destroyed. (Id.)

Postal Inspector Jeffrey DeFuria corroborates this account of what happened to the evidence. (DeFuria Decl., at 2.) He avers:

> Information has been obtained that sometime after sentencing of the subject in 1994, a Postal Inspector from the Postal Inspection Service spoke with David Balter, brother of Richard Balter, to inquire if he had any interest in recovering any of the company's documents and records that were taken into custody during the execution of the search warrant on April 29, 1993 that were in the possession of the government. At that time, David Balter declined to accept return of any documents that related to the business, or his brother, Richard Balter. Afterwards, the case agent for the Internal Revenue Service, as per their agency policy and procedures, handled the destruction and/or disposal of these records.

(Id.)

In June 2002, twenty-one boxes of materials retained from the case by the prosecutors were sent to the National Archives. The archives certified possession of the twenty-one boxes and no others. (Probst Decl. ¶ 1.) Judging from the inventories of these boxes, the seized property they contained was only that evidence actually used or intended to be used at trial. (Probst Decl. attachment A "WordPerfect Inventory;" Davis Decl. attachment D ("Rough inventory of the 21 boxes.") These were the boxes ultimately inventoried by Respondent's paralegal from which the documents in the two boxes sent to Petitioner were culled. (Id.)

**III.  DISCUSSION**

6

### A.   Writ of Mandamus and Motion for Discovery

Petitioner, proceeding pro se, is seeking enforcement of an Order of this Court which was entered pursuant to 41(g), Fed. R. Crim. P.  Petitioner is entitled to the return of the property covered by this Court's grant of his original 41(g) motion.  The Court has considered all evidence received, as required by Rule 41(g), supra.

The evidence submitted by Respondent suggests that Respondent retained in the archives the seized property relevant to the conviction and sentencing of Petitioner, and destroyed the remaining property, including the NPP records Petitioner now seeks.  This conclusion is supported by the diligent search performed by Respondent's paralegal, the affidavits of Special Agent Glynn and Inspector DeFuria, and the other evidence adduced showing that the government does not retain any of the seized property.  The question in this case is whether Plaintiff is entitled to something further pursuant to Rule 41(g).  The Court therefore looks to the standard applied when a movant seeks the release of property pursuant to Rule 41(g) that the government claims is no longer available.

In United States v. Albinson, 356 F.3d 278 (3d Cir. 2004), the Third Circuit Court of Appeals defined this Court's inquiry:

> If the government asserts that it no longer has the property sought, the District Court must determine, in fact, whether the government retains possession of the property; if it finds that the government no longer

7

>     possesses the property, the District Court must determine
>     what happened to the property. The District Court must
>     hold an evidentiary hearing on any disputed issue of fact
>     necessary to the resolution of the motion.

Albinson, 356 F.3d at 281 (internal quotation omitted). The Court is permitted to make these determinations of whether the government still has the property and what happened to it based upon affidavits or verified documentary evidence, but any disputed issues of material fact relating to the status of the property or what happened to it require an evidentiary hearing. Id. at 284.

    Petitioner does not maintain that the remaining items in the twenty-one boxes are documents not seized from NPP, but merely protests that the remaining documents are related to his case and so should be sent to him.  And, in any case, the evidence submitted by Respondent clearly indicates that there is nothing in the twenty-one boxes that was not sent to Defendant that is covered by this Court's order or Rule 41(g), Fed. R. Crim. P. (Davis Decl. ¶¶ 1-5 & attachment D ("Rough inventory of the 21 boxes."))  The Court finds that Respondent appropriately sorted out those documents constituting Mr. Balter's personal and business records according to this Court's Order.  To the extent that Petitioner seeks the return of the remaining contents of the twenty-one boxes, that request will be denied.

    The Court also determines that Respondent is no longer in

possession of evidence beyond that contained in the twenty-one boxes identified.  The evidence indicates that there are no further boxes in the archives or in the relevant government offices.  The fact that Respondent at one time possessed more of NPP's property than was sent to Petitioner appears to be uncontested by either side.  Petitioner's only dispute regarding Respondent's affirmation that it is no longer in possession of this property is based on two mistakes that compounded each other:  Petitioner's mistaken reading of some requisition forms and Respondent's initial mistaken estimation that the records would be very voluminous.

　　　The first mistake is Petitioner's belief that the government retains some 180 boxes.  This belief is an easily traceable misapprehension.  Respondent's July 17, 2008 response to the petition for writ of mandamus includes the records of Special Agent Glynn's requisition of investigation files to ascertain whether any seized property had been inadvertently intermingled with materials prepared and stored by the IRS or the US Attorney.  (Glynn Decl., attachment D.)  The requisition documents make reference to boxes 160 and 161 of 180.  Seeing this, Petitioner concluded that Respondent has 180 boxes of seized property.  But the boxes requisitioned by Glynn are not boxes of seized evidence, but instead internal notes and other investigation materials; moreover, as explained in the affidavit supplied by

9

Respondent to clarify the matter [Docket Item 9], the 180 boxes contained many criminal case files, only some of which were related to Mr. Balter's case.  Thus, the 180 boxes do not contained property seized from NPP, and they never did.  And there is no reason to think that Respondent's estimation of the records still in possession of the government was not simply outdated or mistaken.  Therefore, any dispute here is illusory.  Petitioner's submissions do not raise any genuine dispute as to the conclusion drawn from the evidence submitted by Respondent: that only twenty-one boxes remained as of February 2007, and only some of the documents in those boxes were relevant.

The next determination for the Court to make is what happened to the other seized property not contained in the boxes sent to Petitioner.  Respondent is unable to identify any individual able to personally attest to what happened to the property, nor any records indicating what happened.  Nor does Respondent explain why it was originally believed that there were so many boxes as to require the weekly shipment of ten boxes.  That Respondent cannot produce individuals with personal knowledge of the matter is not surprising, as the motion for return of the property was filed over a decade after the property was seized, and many years after the conviction was affirmed and Section 2255 remedies were at an end.  But the apparent fact that these federal government offices either do not make a practice of

recording when they destroy seized property, or did not do so at the time, requires further consideration.

The exact details of what happened to the remaining property will never become more clear, and it appears to the Court that any further investigation would be futile.  This prejudgment of the fruits of further investigation would not alone prevent the Court from convening an evidentiary hearing. But the Court will not hold such a hearing absent some clearly disputed issue of fact regarding what happened to the property; an evidentiary hearing is not to be held merely to investigate details that are not relevant to any actually disputed issue. There is no genuine dispute over the fact that, over the course of a decade, and after offering these seized business records to Petitioner's brother who declined, the documents were destroyed. Petitioner's sole reason for believing that Respondent did not destroy the evidence as averred is an obvious misreading of the requisition forms submitted by Respondent, and reliance upon Respondent's earlier estimate as to the volume of evidence before it had been identified and sorted.  Importantly, Petitioner has not provided evidence from his own knowledge that the quantity of materials seized extended beyond the items the Government has accounted for.  On the issue of destruction of the evidence, as with the issue of whether Respondent still possesses any evidence, Petitioner's submissions identify no genuine dispute

11

that should be resolved by an evidentiary hearing, and the Court will not convene a hearing without having any material dispute to resolve.

It may be that Petitioner is entitled to some other relief based on the destruction of the seized property.  Rule 41(g) is not a mechanism, for example, to provide monetary compensation for any unlawful destruction of seized property.  But Respondent has exhausted its duties pursuant to Rule 41(g).  Therefore, this petition for writ of mandamus will be denied along with identical motion for discovery.  If Petitioner wishes to raise a new cause of action based on the destruction of property that has become apparent, he may seek to do so upon a new docket in a court of competent jurisdiction by filing an appropriate claim.  This Court does not suggest that such a claim would be meritorious.

### B. Appointment of Counsel

Petitioner also moves for appointment of counsel "for the purpose of filing a successive § 2255 or § 1651 motion."  [Docket Item 10.]  Petitioner alleges that he has vision problems such that he can no longer perform his own legal work.  The Court may consider his impairment as a factor in the appointment of counsel, but cannot appoint counsel to generally serve as Petitioner's lawyer for the vague purpose of filing new motions, or other causes of action, the content of which is unknown.  Upon

the present docket, Petitioner has demonstrated no difficulty in representing himself in this Rule 41(g) motion, which is now at an end.

**IV.   CONCLUSION**

The Court will deny the petition for writ of mandamus as the Court finds that Respondent has complied with the Court's Order pursuant to 41(g) to the fullest extent possible.  The Court is satisfied from the affidavits and documentary evidence submitted by Respondent that the government is no longer in possession of Plaintiff's property, and that any other property it once had was destroyed in the normal course over the passage of years.  The Court will similarly deny any relief sought under the same theory as the petition for the writ of mandamus, including the motion for discovery filed on the criminal docket [Criminal No. 93-00536, Docket Item 20].  Any further relief in addition to that provided in this Court's previous orders must be sought by a new action upon a new docket in a court of competent jurisdiction, at which time Plaintiff may seek appointment of pro bono counsel if desired.  The existing dockets shall be closed, and the accompanying Order entered.

**March 29, 2010**                                  s/ Jerome B. Simandle
Date                                                JEROME B. SIMANDLE
                                                    United States District Judge

13