IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| UNITED STATES, | : |
| v. | : Crim. No. 93-536 (RBK) |
| RICHARD BALTER, | : **OPINION** |
| Defendant. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon Defendant Richard Balter's (1) Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Compassionate Release Motion" or "Mot."), (ECF No. 137); and (2) Motion to Appoint Counsel. (ECF No. 144). For the reasons set forth below, the Court **DENIES** both Motions.

**I.    BACKGROUND**

   **A.    Procedural Background**

Mr. Balter is an inmate in federal custody at Federal Correctional Institution Butner Medium I ("FCI Butner") in Butner, North Carolina. (Mot. 3).[1] In September 1994, the Court sentenced Mr. Balter to life in prison for murder-for-hire, in violation of 18 U.S.C. § 1958, and three concurrent terms of 60 months in prison for mail fraud, in violation of 18 U.S.C. § 1341. (*Id.*; Presentence Investigation Report, or "PSR," at 1).[2] Mr. Balter, now 77, has been continuously incarcerated since his arrest in November 1993. (Mot. 3; PSR at 1).

---

[1] All citations to specific pages of court documents use the page numbers generated automatically by the ECF system.

[2] Mr. Balter's PSR is on file with the U.S. Probation Office in the District of New Jersey.

The present Compassionate Release Motion is the third such motion Mr. Balter has filed—all in the past four years. Balter filed the first motion on June 8, 2020, amid the Covid-19 pandemic. (ECF No. 77). After a hearing on the record, the Court denied that motion on August 11, 2020. (ECF No. 89). Mr. Balter filed the second motion on February 23, 2023, (ECF No. 128), which the Court denied in an Opinion and Order on September 27, 2023. (ECF Nos. 134–35).[3] Less than two months later, on November 14, 2023, Mr. Balter filed the present Compassionate Release Motion. He subsequently filed the Motion to Appoint Counsel on January 30, 2024. The Government opposed both Motions on February 15, 2024. (ECF No. 145, Opp'n Br.). Mr. Balter replied on April 1, 2024. (ECF No. 152, Reply Br.).

**B.    Factual Background**

i.    The Offense[4]

Mr. Balter formulated and oversaw a plan to kill a business associate to collect on the man's $600,000 life insurance policy and thereby save Mr. Balter's struggling business. (PSR ¶¶ 10-34). On the morning of Jan. 20, 1993, two men paid by Mr. Balter shot the victim, Robert Cohen, three times outside his company in the Bronx, New York. (*Id.* ¶ 31). Mr. Cohen succumbed to his injuries roughly six weeks later, leaving behind a wife and two daughters, then ages 10 and 13. (ECF No. 145-1, Letter from Jessica Cohen Banish).

Mr. Balter's plot was several months in the making, and he had countless opportunities to abandon the plan before it was put into action. The impetus for the murder-for-hire scheme was the poor financial position of Mr. Balter's business, which was owed a significant amount of

---

[3] The Opinion is also available in legal databases. *See, e.g.*, *United States v. Balter*, Crim. No. 93-536, 2023 WL 6307439 (D.N.J. Sept. 27, 2023).

[4] The Court reproduces with minor changes the facts of Mr. Balter's offense as presented in its September 27, 2023, Opinion denying Mr. Balter's second Compassionate Release Motion. (ECF No. 134 at 2–3).

money by Mr. Cohen's business. (PSR ¶¶ 10–14). As a sign of good faith, Mr. Cohen agreed to take out a life insurance policy, naming Mr. Balter as the creditor-beneficiary. (*Id*. ¶ 15). As Mr. Balter's own creditors closed in, he and a business partner, Kenneth Cutler, went searching for someone who could kill Mr. Cohen. (*Id*. ¶ 17). In September 1992, Mr. Balter and Mr. Cutler met with Gustavo Gil, who agreed for a fee to help find them a killer, who would also be paid. (*Id*.). Over the next four months, Mr. Balter was the main force driving the plan forward. He told Mr. Gil that he wanted the crime to look drug-related and that the victim should be shot in the head. (*Id*.). He generated phony checks in preparation of paying Mr. Gil and the would-be killer. (*Id*. ¶¶ 18–19, 25). He repeatedly called Mr. Gil at his home to pressure him to find a killer more quickly. (*Id*. ¶ 20). After a hitman was contracted, Mr. Balter directed that Mr. Cohen's murder should not be delayed and if Mr. Cohen showed up at work with someone else, the hitman should kill the second person as well. (*Id*. ¶ 23). Finally, after an aborted attempt to murder Mr. Cohen, Mr. Balter instructed Mr. Gil and the hitman to return to Mr. Cohen's business the next morning and try again. (*Id*. ¶¶ 28–30). This attempt to kill Mr. Cohen was successful. (*Id*. ¶¶ 31–32).

After attempting to collect on Mr. Cohen's life insurance policy, Mr. Balter then tried to evade detection by telling an employee to lie to investigators, attempting to secure false testimony from two different people, and offering to pay people to kidnap him from the courtroom during his trial. (*Id*. ¶¶ 40–51). Mr. Balter's Presentence Report notes that he received an upward adjustment to his base offense level under the U.S. Sentencing Guidelines ("U.S.S.G." or "the Guidelines") as an "organizer or leader" of the crime and for his several attempts to obstruct justice. (*Id*. ¶¶ 40–52, 59–60).

ii.      <u>Mr. Balter's Deteriorating Health</u>

Mr. Balter is in poor health. In support of his second Compassionate Release Motion, Mr. Balter presented evidence of:

> a litany of medical problems, including coronary artery disease, ischemic heart disease, degenerative disc disease, type II diabetes, glaucoma, osteoarthrosis, and macular degeneration. Balter is legally blind in both eyes and uses a walker to move around, requiring assistance for even basic tasks. He has suffered several heart attacks in his life and two strokes, the second of which occurred in the past year and rendered him unable to open his left eye without using his hand.

(ECF No. 134 at 3–4) (internal citations omitted). Mr. Balter continues to experience these conditions, (Mot. 8), and adds that he also suffers from stage 3 kidney disease. (*Id.*). Mr. Balter claims that these conditions make him unable to care for himself within prison, (*id.*), while the Government disputes that characterization. (Opp'n Br. 21).

iii.      <u>Letters For and Against Mr. Balter's Compassionate Release Motion</u>

The parties submitted letters both for and against Mr. Balter's Compassionate Release Motion. The Government submitted a letter from one of Mr. Cohen's daughters, Jessica Cohen Banish, in which she opposes Mr. Balter's release from prison. (ECF No. 145-1). Mr. Balter submitted seven letters in support of his release from friends, fellow inmates, and a former Pennsylvania state judge. (Mot., Exs. 6–9, 11–13). These are the same letters Mr. Balter submitted in support of his second Compassionate Release Motion. *See* (ECF No. 133, Exs. 5–8, 10–12).

## II.    LEGAL STANDARD

### A.    Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

4

>or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The changes implemented by the First Step Act allow prisoners to directly petition a district court, as opposed to the Bureau of Prisons ("BOP"), for a reduction in sentence so long as they have satisfied the exhaustion requirements. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020). Before defendants may petition a court to reduce their sentence under § 3582(c)(1)(A), they "must at least ask the Bureau of Prisons (BOP) to [bring a motion] on their behalf and give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). Thirty days after submitting the request or after exhausting all administrative appeal rights, whichever is earlier, the defendant may move for compassionate release in the district court. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Once his motion is properly before the district court, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, Crim. No. 06-849, 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (quoting *United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the U.S. Sentencing Commission (the "Commission") with providing further guidance. 28

U.S.C. § 994(t). Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id*. The Commission provided guidance at Section 1B1.13 of the U.S. Sentencing Guidelines (the "Guidelines" or "U.S.S.G.").[5] There, the Guidelines explain that extraordinary and compelling reasons exist under six enumerated circumstances. *Id*. Relevant to the present Motion, the Guidelines state that medical circumstances can constitute an extraordinary and compelling reason for a sentence reduction where:

> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

*Id*. § 1B1.13(b)(1)(B)–(C). Age can also constitute an extraordinary and compelling reason where "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. § 1B1.12(b)(2). Separately,

---

[5] The Commission amended this policy statement, effective Nov. 1, 2023, to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A) directly with the district court and to expand the list of "extraordinary and compelling reasons" that can warrant a sentence reduction. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28254–59 (May 3, 2023).

extraordinary and compelling reasons exist in some cases where a defendant has received an "unusually long sentence" that would be grossly disparate from the sentence likely to be imposed today for the same crime. *Id.* § 1B1.13(b)(6). Finally, the Guidelines contain a catchall provision that allows courts to grant a sentence reduction when the defendant presents "any other circumstance or combination of circumstances . . . similar in gravity" to those that appear elsewhere in the policy statement. *Id.* § 1B1.13(b)(5).

"Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023); *see also United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (holding that the district court acted within its discretion to deny compassionate release based on the § 3553(a) factors even where the Government did not dispute that extraordinary and compelling reasons were present). The defendant bears the burden of showing that he is entitled to compassionate release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020).

### B.   Motion to Appoint Counsel

There is no right to counsel for a criminal defendant seeking compassionate release under 18 U.S.C. § 3582(c). *United States v. Millhouse*, No. 20-3633, 2021 WL 3280789, at *3 n.4 (3d Cir. 2021) (citing *United States v. Manso-Zamora*, 991 F.3d 694, 696 n.2 (6th Cir. 2021) (collecting cases)); *United States v. Dorsey*, 520 F. Supp. 3d 681, 683–84 (E.D. Pa. 2021). "In determining whether to appoint counsel in compassionate release cases, a court must first determine whether the defendant's claim has some merit in fact and law." *United States v. Duncan*, Crim. No. 21-187, 2022 WL 1213466, at *2 n.2 (D.N.J. Apr. 22, 2022) (quoting *United*

7

*States v. Gonzalez*, Crim. No. 02-446, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021) (cleaned up)). If meritorious, a district court has discretion to appoint counsel after considering:

> 1. [The movant's] ability to present his or her own case; 2. the difficulty of the particular legal issues; 3. the degree to which factual investigation will be necessary and the ability of the [movant] to pursue investigation; 4. the [movant's] capacity to retain counsel on his or her own behalf; 5. the extent to which a case is likely to turn on credibility determinations, and; 6. whether the case will require testimony from expert witnesses.

*Dorsey*, 520 F. Supp. 3d at 684 (citing *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)).

### III.   DISCUSSION

As a preliminary matter, the Court finds that Mr. Balter satisfied the exhaustion requirements such that the Court may consider his Compassionate Release Motion. Mr. Balter requested a Reduction in Sentence from the BOP on May 1, 2023, (Mot., Ex. 1), and then waited more than thirty days before filing his Motion before this Court. *See Harris*, 973 F.3d at 171. The Government agrees that Mr. Balter satisfied the exhaustion requirements. (Opp'n Br. 2). The Court therefore turns to the substance of the Compassionate Release Motion.

#### A.   Motion for Compassionate Release

The Court denies Mr. Balter's Motion because even if he were able to demonstrate that extraordinary and compelling reasons exist to reduce his sentence, such a reduction is not warranted upon consideration of the § 3553(a) factors. Mr. Balter argues that his medical conditions, age, unusually long sentence, and "other reasons" constitute extraordinary and compelling reasons that warrant a sentence reduction. (Mot. 4, 6–8). As it did when ruling on Mr. Balter's second Compassionate Release Motion, the Court is willing to assume for purposes of this Opinion that Mr. Balter's deteriorating health and advanced age rise to the level of extraordinary and compelling reasons for a sentence reduction. *See* (ECF No. 134 at 9). However, "even if a defendant is eligible for it, a district court may deny compassionate release

8

upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *Alexander*, 2023 WL 4198042, at *1. The Court makes such a determination here.

The § 3553(a) factors do not tip in Mr. Balter's favor any more today than they did eight months ago, when the Court denied Mr. Balter's second Compassionate Release Motion upon consideration of those factors. The Court's reasoning in its September 27, 2023, Opinion applies with equal force to the present Motion:

> A reexamination of the nature and circumstances of Balter's offense, 18 U.S.C. § 3553(a)(1), reveal it to be an especially heinous crime. Balter's unabashed avarice for $600,000 in life insurance proceeds motivated the murder of Robert Cohen, a middle-aged father of two. Balter pushed the plot forward at every turn, pressuring an associate to find a killer, using fraudulent checks to pay the hitmen, and directing the hitmen to try again after an aborted attempt to kill Cohen. At one point, Balter suggested that the killer also murder Cohen's co-worker if Cohen was not alone, illustrating Balter's disregard for human life. After Cohen's death, Balter tried to both collect on Cohen's life insurance policy and evade responsibility. In four discrete instances of obstruction of justice, Balter tried to hinder the investigation into Cohen's murder and the prosecution that ultimately landed him in prison.
>
> Given the nature and circumstances of Balter's offense, the Court is mindful of the need for the sentence imposed to reflect its seriousness, promote respect for the law, provide just punishment, and afford adequate deterrence. 18 U.S.C. § 3553(a)(2)(A)–(B). The Court acknowledges the words of apology that Balter offers to the Cohen family as part of his motion. However, we agree with the Government that Balter's release would send the wrong message to the public about the gravity of his offense. Murder-for-hire is a reprehensible crime that Balter pursued for his own economic benefit. No amount of money can excuse the devastating impact that Balter's actions have had on Cohen's family, which has endured many years now without an uncle, husband, and father. Cohen's family members who have submitted letters to the Court oppose Balter's release. Similarly, the Court believes that denying Balter's motion best promotes respect for the law, provides just punishment, and sends the message to society at large that the justice system will respond aggressively to crimes of this nature.

(ECF No. 134 at 10–11) (internal citations omitted).

Here, as was the case in assessing Mr. Balter's second Compassionate Release Motion, the § 3553(a) factors override any extraordinary and compelling reasons Balter can present in favor of a sentence reduction. Accordingly, the present Compassionate Release Motion is denied.

### B. Motion to Appoint Counsel

For the reasons stated above, Mr. Balter's Compassionate Release Motion does not have arguable merit in fact and law.[6] Therefore, his Motion to Appoint Counsel is denied. *See Millhouse*, 2021 WL 3280789, at *3 ("[G]iven that [the defendant's] motion for compassionate release lacked arguable merit, the District Court did not err in denying his motion for appointment of counsel."); *United States v. Rivera*, Crim. No. 06-849, 2022 WL 3152654, at *4 n.9 (D.N.J. Aug. 8, 2022) ("Defendant is not entitled to counsel on a compassionate release motion, and it would be a waste to appoint counsel where the motion is futile.").

## IV. CONCLUSION

For the foregoing reasons, Mr. Balter's Compassionate Release Motion (ECF No. 137) is **DENIED**. Mr. Balter's Motion to Appoint Counsel (ECF No. 144) is also **DENIED**.

An Order follows.

Dated:     May 9, 2024                                        /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge

---

[6] Mr. Balter's Motion to Appoint Counsel partially relies on a Standing Order appointing the Office of the Federal Public Defender for the District of New Jersey to represent defendants seeking a sentence reduction pursuant to Amendment 821 to the Guidelines, which took effect November 1, 2023. (ECF No. 144 at 1) (invoking D.N.J. Standing Order 2023-04). As the Government points out, however, Mr. Balter's Motion for Compassionate Release makes no mention of Amendment 821. (Opp'n Br. 22). Therefore, the Standing Order is not relevant to his Motion to Appoint Counsel.